THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ANGELO WRIGHT,<br><br>        Plaintiff,<br>v.<br><br>BRUCE BURNHAM et al.,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:18-CV-84-DN<br><br>District Judge David Nuffer |

In his Amended Complaint, (ECF No. 43), Plaintiff Angelo Wright[1] asserts that the only remaining defendant, Dr. Burnham,[2] in his individual and official capacities,[3] violated Plaintiff's right to be free of cruel and unusual punishment under the Federal Constitution's Eighth Amendment.[4] *See* 42 U.S.C.S. § 1983 (2021) (providing person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

---

[1] On April 7, 2021, Defendant filed a "Suggestion of Death" notice regarding Plaintiff Angelo Wright. (ECF No. 65.) On August 11, 2021, Plaintiff Angelo Wright was "substituted with the Estate of Angelo Wright." (ECF No. 69.) Still, the terms "Plaintiff" and "Wright" are used throughout the Order to refer to Angelo Wright himself.

[2] After naming Nurse Jackman as a defendant, Plaintiff has since dropped claims against him. Wright concedes to summary judgment as to Jackman. The only remaining defendant then is Burnham. (Pl.'s Opp'n to D's Mot. for Partial Summ. J., ECF No. 88-1, at 1.)

[3] Wright never specifies any official-capacity claims or requested related remedies in the Amended Complaint. Official-capacity claims are thus not discussed further here.

[4] He also brings a claim of unnecessary rigor under the Utah Constitution. However, district courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.S. § 1367(c)(3) (2021). Indeed, in this Order, all claims over which this court has original jurisdiction are dismissed. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Under statute and Circuit guidance, exercise of jurisdiction over Wright's remaining state claim is declined. Accordingly, Wright's unnecessary-rigor cause of action is dismissed without prejudice and not discussed further here.

1

party injured"). Specifically, Wright contends Defendant Burnham gave inadequate medical care during Wright's stay at Central Utah Correctional Facility (CUCF). (ECF No. 43.) Wright requests damages and injunctive relief.[5] (*Id.*)

I. PENDING MOTIONS AND BRIEFING ............................................................................ 2

II. UNDISPUTED MATERIAL FACTS............................................................................... 5

III. QUALIFIED-IMMUNITY ANALYSIS ........................................................................ 11

    Qualified Immunity Standard ........................................................................ 11

    Application to Burnham's Defense................................................................ 13

IV. ORDER............................................................................................................................ 20

## I. PENDING MOTIONS AND BRIEFING

Defendant filed a summary-judgment motion asserting he is protected from this action under the qualified-immunity doctrine. (ECF No. 73.) As evidentiary support, Defendant attached the deposition transcripts of Defendant, (ECF No. 73-3); CUCF officer Zachary Bown, (ECF No. 73-6); San Juan County (SJC) physician's assistant (PA) Blen Freestone, (ECF No. 73-4); CUCF nurse Jason Jackman, (ECF No. 73-2); and CUCF emergency medical technician Rick Wirsch, (ECF No. 73-5).

---

[5] Because Wright is deceased, the injunctive-relief request is moot. *See Estate of Schultz v. Brown*, 846 F. App'x 689, 694 (10th Cir. 2021) (unpublished) (stating "plaintiff's death meant he could not show the continuing or impending harm required to obtain prospective relief").

Wright then filed a motion for partial summary judgment in which he asked the Court to "determine that Defendant Dr. Burnham violated [Wright's] constitutional right to adequate medical care," effectively asking the Court to set aside "questions of causation, damages, Jackman's liability, and whether Defendants are entitled to qualified immunity." (ECF No. 75.)[6] As evidentiary support, Wright filed Defendant's declaration, (ECF No. 76-1); Wright's December 12 and 20, 2016 SJC medical request forms, (ECF Nos. 76-2, 76-4); December 19 through 22, 2016 emails between SJC Sergeant and Jackman, (ECF No. 76-5); Jackman's notes from December 23, 2016, (ECF No. 76-6); Dr. John M. Deacon's expert-witness report of December 12, 2020, (ECF No. 76-7)[7]; and, Jackman's and Michelle Lapierre's nursing notes from December 29, 2016, (ECF No. 76-8).

In response, Defendant filed an opposition memorandum, (ECF No. 84), as to Wright's motion for partial summary judgment, (ECF No. 75). Defendant attached the following (new) evidentiary support: Wirsch declaration, (ECF No. 84-7); Jackman declaration, (ECF No. 84-12); Lapierre declaration, (ECF No. 84-13); CUCF medical technician Shawn Lund's declaration, (ECF No. 84-14); CUCF Sergeant David Sorenson's declaration, (ECF No. 84-16); UDOC nurse David Rich's declaration, (ECF No. 84-18); nursing notes from December 24 to 29, 2016, (ECF

---

[6] This motion for partial summary judgment is inappropriate. Once the defendant raises the defense of qualified immunity, the plaintiff's only recourse is to try to carry the burden that shifts to him, not file a separate summary-judgment motion as an end run around qualified immunity. *See Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020). In any case, regarding Defendant's summary-judgment motion, this Order determines that Defendant did not violate Wright's constitutional right to adequate medical care, which serves the dual purpose of also deciding and denying Wright's motion for partial summary judgment. (ECF No. 75.) Still, in its overall analysis in this Order, the evidence filed with the partial-summary-judgment motion and briefing was considered and noted.

[7] Defendant moves to exclude Dr. Deacon's expert opinions. (ECF Nos. 76-7; 78; 89-5.) This motion, under Federal Rule of Evidence 702, is denied. For purposes of this Order only--having thoroughly reviewed his opinions--it is assumed that Dr. Deacon is qualified as an expert in wound care; has specialized knowledge that has helped the Court "understand the evidence or . . . determine a fact in issue"; based his testimony "on sufficient facts or data"; presents his testimony as "the product of reliable principles and methods"; and "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

No. 85-1); left-foot medical treatment notes, (ECF No. 85-2); SJC Jail medical records, (ECF No. 85-3); and, CUCF Special Management Unit daily logs, (ECF No. 85-4). This was countered by Wright's reply. (ECF No. 95.) As evidentiary support, Wright filed an appendix with the following (new) documents: University of Utah Health Care progress notes, (ECF No. 96-1, at 2); and, Wright's Supplemental Response to First Set of Discovery (interrogatories), (ECF No. 96-2).[8]

Wright then filed (corrected) opposition, (ECF No. 88-1), to Defendant's summary-judgment motion, (ECF No. 73). As evidentiary support, Wright filed an appendix with the following (new) documents: Jackman's interrogatory responses, (ECF No. 89-3); and, Dr. Deacon's Deposition, (ECF No. 89-5). This was countered by Defendant's reply. (ECF No. 94.)

Wright also filed an opposition memorandum, (ECF No. 90), to Defendant's motion to exclude Deacon's expert testimony, (ECF No. 78). This was countered by Defendant's reply. (ECF No. 93.)

Defendant seeks summary judgment on the basis of qualified immunity. In general, summary judgment is proper only when, seeing the evidence in a light most positive to the non-moving party and drawing all reasonable inferences in that party's favor, the movant shows that

---

[8] Defendant objects to use of this evidence on summary judgment. (ECF No. 97.) And Wright's failure to respond to the objection amounts to a concession. Defendant's objection is sustained and this evidence is rejected as inadmissible. Crucially, Angelo Wright did not sign the response, as is required for his interrogatory responses to be admissible. Fed. R. Civ. P. 33(b)(5) ("The person who makes the answers must sign them . . . ."). "[C]aselaw indicates that, in all but the rare situation involving an incompetent answering party, courts have steadfastly deemed the requirement 'mandatory.'" *In re Cca Recordings 2255 Litig.*, No. 19-CV-2491-JAR, 2021 U.S. Dist. LEXIS 2108, at *3 (D. Kan. Jan. 2021). "They have recognized the requirement may not 'be relaxed merely because of difficulties relating to the availability of the party.'" *Id.* (quoting *McDougall v. Dunn*, 468 F.2d 468, 472 (4th Cir. 1972)). "Courts' strict adherence to Rule 33(b)'s signature requirement is premised in large part on the importance interrogatory answers have as admissible evidence. *Id.* at *4. "'Such verification is essential for establishing the truth of the answers so that they may be relied on by the parties during the litigation and at trial.'" *Id.* (citation omitted).

no genuine dispute of material fact exists, and the movant is due judgment as a matter of law. *Sawyers*, 962 F.3d at 1282; Fed. R. Civ. P. 56(a).

## II. UNDISPUTED MATERIAL FACTS

In general, the undisputed facts are set forth in chronological order, with each paragraph keyed to a particular date.

**1992**. Wright arrived in Utah Department of Corrections (UDOC) custody. (ECF No. 73, at 7.)

Nurse Jackman worked for UDOC at the relevant time. (ECF Nos. 73-2, at 7-8; 84-12, at 3; 89-3, at 8.) Central Utah Correctional Facility (CUCF) Medical Director Burnham (Defendant) worked for UDOC at the relevant time, where he oversaw work of nurse practitioners, PAs, and staff physicians. (ECF Nos. 73-2, at 12-13; 73-3, at 10; 76-1, at 2.)

**November 2015**. Wright had an "ulcer that was developing on his ankle, and he was ultimately brought back from jail to [CUCF] for closer . . . care, better management of that wound." (ECF No. 73-2, at 55.) The wound was treated by Jackman at CUCF until it was "vastly improved," and Wright could return to SJC jail. (*Id.* at 58-60.)

**December 15, 2016**. At the SJC jail, P.A. Freestone saw Wright, assessing different "venous stasis ulcers"[9] as "very slow healing" and recommending to Defendant for Wright "to see a wound care specialist," recognizing that referral was "not ultimately [Freestone's] decision," but would instead be determined by "the regular [prison] physician first." (ECF Nos. 73-4, at 31, 36-37; 76-1, at 5; 76-2.)

---

[9] Venous skin ulcers are "painful wounds" "caused by poor circulation." (ECF Nos. 73, at 7; 73-3, at 10; 34-35; 76-1, at 2; 89-5, at 18-19.)

5

**December 19, 2016**. An email was sent by SJC Sgt. Marcia Shumway to Jackman, stating, "[Wright] seen our local provider on the 14th, as a result Dr. Freestone, does not feel that his leg wound is healing the way it should and would like him to see a specialist. We would request that he get transferred back to the prison to have this addressed." (ECF No. 76-5.)

**December 20, 2016**. Wright filed a medical request, saying, "I can hardly put pressure on my foot to walk" and asking about specialist; staff response stated, "State medical has been notified." ECF Nos. 73-4, at 41; 76-4.)

**December 22, 2016**. Defendant ordered Wright transferred to CUCF to "be evaluated by UDOC medical staff who were familiar with [Wright's] condition and who had the knowledge and experience to properly treat venous stasis ulcers." (ECF No. 76-1, at 5.) Wright was taken by wheelchair to be transported from SJC to CUCF. (ECF No. 76-5, at 2.) Wright arrived at CUCF. (ECF No. 85-4, at 3.)

**December 23, 2016**. Wright was assessed in-person by Jackman. (ECF Nos. 73-2, at 70, 73; 76-1, at 6; 76-6, at 1; 84-12, at 5; 89-3, at 9.) Jackman noted his foot was "red and swollen," with "venous stasis ulcers" that were not "open," but "swelling," "weeping," and "raw" looking, causing Wright pain. (ECF Nos. 43, at 5; 73-2, at 71, 73-74, 81, 112; 73-3, at 76; 76-6, at 1; 84-12, at 6.) Wright's pain was not likely from, but "[c]ould have been consistent with[,] a musculoskeletal injury that he incurred during transport," from SJC to CUCF. (ECF No. 89-5, at 76-77, 100.) Jackman noted there were no "signs of infection"--e.g., he did not see pus and ankle was not "hot to the touch." (ECF Nos. 73-2, at 105-06; 73-3, at 76; 76-1, at 6; 84-12, at 6.) Jackman consulted with Defendant, whom Wright did not see[10] and who "gave a verbal order to

---

[10] There is a question of fact as to whether Defendant saw Wright on December 23, 2016 or did not see Wright and consulted with Jackman from another location. However, this fact is not material, in that, whether Defendant visited with Defendant and Jackman in person or consulted with Jackman from another location, the

6

the nurse" to change ulcer dressings daily and "[c]lean with normal saline and place Xeroform gauze,[11] cover with a Telfa pad." Defendant "wasn't concerned" about infection; described the ulcers as "typical"; recommended "intensive elevation of the extremity, support hose, . . . and further ongoing observation and assessment on a daily basis"; "ordered crutches" and "extra pillows or blankets to elevate feet"; saw no "indication" antibiotics required; and ordered acetaminophen and ibuprofen. (ECF Nos. 43, at 5; 73-2, at 84-86, 106; 73-3, at 45-46, 49-50, 62, 73-75, 76-77; 76-1, at 6; 76-6, at 1-2; 84-12, at 7-8, 10; 85-1, at 10, 12, 17-18; 89-3, at 5-6.) Defendant "believe[d] Jackman ha[d] the knowledge and experience to recognize signs and symptoms of an infection and . . . would have noted any signs of infection and reported them to [Burnham]." (ECF No. 76-1, at 6.) Defendant's rationale for his order was that "[d]aily dressing changes not only promote healing but allow for medical staff to assess the wound daily for changes and address signs of infection as they arise." (*Id.* at 7; ECF Nos. 76-7, at 30; 84-12, at 7.) The wound was cleaned with "NS" (saline) and covered with "Xeroform gauze" and "Telfa pad." (ECF Nos. 73-2, at 75, 87; 73-3, at 76; 76-6, at 1; 76-7, at 28-29.) Jackman did not consider discoloration, wetness or sweatiness as "specific indicator[s] for infection." (ECF No. 73-2, at 79-80.) Jackman considered pain a possible sign of infection. (*Id.* at 80.) Jackman did not think Wright "had an infection that day." (ECF No. 89-5, at 121.) A nurse "can't ignore" and is "supposed to go look and recognize [infection with] redness, tender to palpation, swelling, four ulcerations." (*Id.* at 119.) "[A]ny nursing student will learn about what to look for, for an infection": "redness, swelling, tenderness, and warmth." (*Id.* at 55.)

---

conclusion is the same. Viewing the facts in Wright's favor, this Order assumes that Defendant did not see or visit in-person with Wright on December 23, 2016.

[11] "[G]auze that has ointment in it to help keep the area clean [and] provide a healing environment." (ECF No. 73-2, at 75, 87.)

Dr. Deacon stated that Jackman "violated the standard of care on this day," in that he "had a deficit in knowledge or training to not recognize likely infection with the constellation of findings present in this case." (*Id.* at 59.) Likewise, Deacon said that Defendant violated the standard of care in that he should have "formulate[d] a differential diagnosis for the cause in the lower . . . extremity, physical examination findings, and the need for crutches"--i.e., "[i]nfection should have been [but was not] acknowledged as the most likely diagnosis at the top of the list of possible diagnoses." (*Id.* at 66.) "[I]t was inappropriate for Dr. Burnham to rely on Jason Jackman to conduct an assessment of Mr. Wright." (*Id.* at 124.) "[T]he standard of care would have required Dr. Burnham to "perform his own examination and make his own assessment" and "culture the wound and start antibiotic therapy, but this was not done." (*Id.* at 65, 68, 122.) Defendant did not believe Wright had an infection. (*Id.* at 68.)

After this day, Defendant "left on vacation for a week," becoming unavailable "to assist . . . by phone or in person," and Wright "was already transferred up to the University . . . [b]y the time" Defendant returned from vacation. (ECF No. 73-3, at 45, 49, 62.)

**December 24, 2016**. Wright was seen by Nurse Rich, "who completed a dressing change . . . [and] noted [Wright] did not exhibit signs or symptoms of an infection." (ECF Nos. 76-1, at 7; 76-7, at 34; 84-18, at 3; 85-1, at 9; 85-4, at 11.)

**December 26, 2016**. Wright refused medical treatment, saying he would change his dressing himself. (ECF Nos. 73-6, at 36; 76-7, at 31; 84-16, at 4; 85-1, at 6; 85-4, at 19; 96-4, at 5.)

**December 27, 2016**. Emergency Medical Technician Rick Wirsch cleaned Wright's wound with saline and "placed Xeroform gauze, covered by Telfa pad, as per order." (ECF Nos.

73-5, at 18; 84-7, at 3; 85-1, at 5; 85-4, at 23; 96-2, at 11; 96-4, at 4.) Wirsch saw no signs of wound infection. (ECF Nos. 76-1, at 7; 76-7, at 30; 87-7, at 4.)

**December 28, 2016**. Wright refused medical treatment, saying he would change dressing himself. (ECF Nos. 73-6, at 48; 76-1, at 8; 76-7, at 29; 84-13, at 4; 84-16, at 4; 85-4, at 27; 96-4, at 3.) Each day that Wright refused dressing change made it less possible that he could have "receive[ed] different care or an earlier intervention." (ECF No. 89-5, at 112.)

**December 29, 2016**. "Lapierre . . . mentioned to [Nurse Jackman] that [Wright] had been refusing his dressing changes and . . . to come to the clinic," including on December 29, 2016. (ECF Nos. 73-3, at 89, 94; 76-1, at 8; 76-7, at 28; 84-12, at 7; 84-13, at 4-5; 84-16, at 4-5; 85-1, at 3; 85-4, at 31; 89-3, at 7; 96-4, at 2.) Later, after Wright told guards of "significant pain" and "hole" appearing in his ankle and "white liquid . . . oozing from his ankle," Wright was brought "down to the clinic," where Jackman saw "skin sloughing away," "open" wound, with drainage "mixed with blood" and "more discolored than it was before" and, at direction of "provider," "cleaned with NS" and "administered a shot of antibiotics . . . and transferred [Wright] to [the University Medical Center (UMC)]." (ECF Nos. 43, at 6; 73-2, at 84-86, 90, 112; 76-1, at 8; 76-7, at 28; 84-12, at 7-8; 85-1, at 2-3; 85-4, at 31; 89-3; 96-4, at 2.) P.A. Dennis ordered antibiotic, Tramadol, and Rocefin. (ECF Nos. 85-1, at 3; 89-3, at 7, 16; 96-4, at 2.)

**January 21, 2017**. After UMC did "a right ankle irrigation and debridement in December, 2016," Wright subsequently re-presented to the Emergency Department with increased pain and drainage from his right ankle," then undergoing "a right below-knee amputation." (ECF No. 96-1, at 2.)

**November 14, 2018**. This civil-rights complaint was removed to federal court from state court. (ECF No. 1-2.)

9

**January 6, 2020**. Amended complaint was filed. (ECF No. 43.) Defendant was sued in official and individual capacities. (*Id.* at 2.)

**December 12, 2020**. Expert witness report prepared by Dr. John Deacon, in which he opined that

- Wright had an infection on 12/23/16 through 12/29/16;
- Nurse Jackman's assessment on reason why ankle skin was "macerated" was "incorrect";
- ulcers and skin maceration "do not cause pain that limits ambulation";
- Nurse Jackman's 12/23/16 assessment "violated the standard of care";
- Defendant's evaluation on 12/23/16 "violated the standard of care"; and
- "[i]f not for the errors and omissions of Nurse Jackman and Dr. Burnham, [Wright] would have avoided below-knee amputation." (ECF No. 76-7.)

**March 25, 2021**. Wright's state parole agent received word from police that Wright had died. (ECF No. 65-1, at 3.)

**August 11, 2021**. Wright's estate was substituted as plaintiff. (ECF No. 69.)

**November 22, 2021**. Defendants' summary-judgment motion was filed. (ECF No. 73.)

**November 23, 2021**. Wright's motion for partial summary judgment was filed. (ECF No. 75.)

**December 20, 2021**. Filing of Defendant's motion to exclude Dr. Deacon's expert opinions. (ECF No. 78.)

**January 28, 2022**. Briefing and evidence submission completed as to pending summary-judgment motions and motion to exclude. (ECF Nos. 76, 82-86, 88-90, 93-97.)

### III. QUALIFIED-IMMUNITY ANALYSIS

### Qualified Immunity Standard

"When a § 1983 defendant raises the qualified immunity defense, the burden shifts to the plaintiff." *Sawyers*, 962 F.3d at 1282. "To overcome qualified immunity, a plaintiff must show (1) facts that demonstrate the officials violated a federal constitutional or statutory right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The two prongs of qualified immunity may be addressed in either order; "if the plaintiff fails to establish either prong of the two-pronged qualified immunity standard, the defendant prevails on the defense." *Spencer v. Abbott*, 731 F. App'x 731, 740 (10th Cir. 2017) (unpublished) (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)); *see Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) ("In short, although we will review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." (citation omitted)).

This orderaddresses the first prong of violation of a federal constitutional right. Because that is dispositive, the second prong need not be addressed.

**Violation of federal constitutional right--Deliberate indifference.** "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."). "The deliberate indifference standard has objective and subjective components." *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) 992 (brackets and quotations omitted). Both must be satisfied. *See id.*

**The Objective Component.** "The objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause" of the U.S. Constitution. *Id.* (quotations omitted). "A medical need is considered sufficiently serious to satisfy the objective prong if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014) (quotations omitted).

**Subjective Component.** The dispositive question on the subjective component is whether the plaintiff has "offered evidence that [the defendant] acted with a culpable state of mind as to" the plaintiff's infection or risk of infection. *Savage v. Troutt*, 780 F. App'x 574, 579 (10th Cir. 2019) (unpublished).

"To satisfy the subjective component, the plaintiff must show the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Burke*, 935 F.3d at 992 (quoting *Farmer*, 511 U.S. at 837). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotations omitted). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact." *Id.* (quotations omitted). "We have found deliberate indifference when jail officials confronted with serious symptoms took no action to treat them." *Id.* at 993. And "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

"[A]ccidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (citing *Estelle*, 429 U.S. at

105-06); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (holding Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety"). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata*, 427 F.3d at 751. A claim alleging deliberate indifference to medical needs is very different than a medical negligence claim.

### Application to Burnham's Defense

**Objective Component.** The infection and amputation alleged, for purposes of this Order, show that Wright endured an objectively serious harm. *See, e.g., Spradley v. Leflore Cnty. Detention Ctr. Pub. Trust Bd.*, 764 F. App'x 692, 700 (10th Cir. 2019) (unpublished) ("Bedsores can support a deliberate indifference claim. We will assume without deciding that [plaintiff's] bedsores were sufficiently serious to satisfy the objective component of deliberate indifference.") (citing *Green v. McKaskle*, 788 F.2d 1116, 1126-27 (5th Cir. 1986)); *Tanner v. Campbell*, No. 21-cv-2340-DMA-NRN, 2022 U.S. Dist. LEXIS 20753, at *26-27 (D. Colo. Feb. 4, 2022) ("[T]he actual harm that Mr. Tanner suffered, including sepsis ultimately leading to loss of circulation in, and the amputation of, parts or all of his extremities, is sufficiently serious to satisfy the objective prong." (citing *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (concluding deliberate-indifference plaintiff may satisfy objective prong of analysis either by alleging alarming symptoms were ignored or pointing to ultimate harm suffered))).

**The Subjective Component is Not Satisfied.** The pivotal question is whether Wright has "offered evidence that [Defendant] acted with a culpable state of mind as to" the Wright's infection or risk of infection. *Savage v. Troutt*, 780 F. App'x 574, 579 (10th Cir. 2019) (unpublished). Though many other people are mentioned in the section of undisputed material

facts, the legal focus is entirely on Defendant Burnham's state of mind--i.e., was Defendant aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and did he also draw the inference? And that answer is no.

It is undisputed for this motion

- that Defendant was aware that Wright had been successfully treated at CUCF in the previous thirteen months for a similar past ulcer, (ECF No. 73-3, at 36-38);

- that Defendant had ordered Wright's transfer back to CUCF from SJC jail (just as had happened about thirteen months before) for better treatment of his current ulcers, (*id.* at 42-43);

- that within three days of being notified by SJC that Wright needed better treatment, the same nurse (Jackman) who had contributed to the successful treatment of the past ulcer was assessing Wright in person, on December 23, 2016, upon Wright's arrival back to CUCF, (ECF Nos. 76-5; 73-2, at 70, 73; 76-1, at 6; 76-6, at 1; 84-12, at 5; 89-3, at 9.);

- that, though Defendant did not see Wright in-person on December 23, 2016, Defendant consulted with Jackman about Jackman's in-person assessment of Wright as to Jackman's perception that Wright's foot was painful, red, and swollen, the ulcers were not open but were weeping and raw-looking, but that Jackman did not see pus and feel heat coming from the ulcered area and did not believe Wright had an infection that day, (ECF Nos. 43, at 5;73-2, at 71, 73-74, 81, 112; 73-3, at 76; 76-6, at 1; 84-12, at 6; 89-5, at 121);

- that "Jackman ha[d] the knowledge and experience to recognize signs and symptoms of an infection and . . . would have noted any signs of infection and reported them to [Burnham]," (ECF No. 76-1, at 6);
- that a nurse "can't ignore" and is "supposed to go look and recognize [infection with] redness, tender to palpation, swelling," (ECF No. 89-5, at 119); and
- that "any nursing student will learn about what to look for, for an infection": "redness, swelling, tenderness, and warmth," (*id.* at 55).

It is also undisputed that, based on his awareness of these facts, Defendant did not believe Wright had an infection, (ECF No. 89-5, at 68), but gave orders consistent with the need to heal the wound with the comprehensive "verbal order[s] to" Jackman: change ulcer dressings daily, by cleaning "with normal saline" and applying Xeroform gauze and Telfa pad; "intensive elevation of the extremity, support hose, . . . and further ongoing observation and assessment on a daily basis"; "crutches" and "extra pillows or blankets to elevate feet"; and acetaminophen and ibuprofen, (ECF Nos. 43, at 5; 73-2, at 84-86, 106; 73-3, at 45-46, 49-50, 62, 73-75, 76-77; 76-1, at 6; 76-6, at 1-2; 84-12, at 7-8, 10; 85-1, at 10, 12, 17-18; 89-3, at 5-6). Defendant's rationale for his order was that "[d]aily dressing changes not only promote healing but allow for medical staff to assess the wound daily for changes and address signs of infection as they arise." (ECF Nos. 76-1, at 6; 76-7, at 30; 84-12, at 7.)

Once the consultation was over and Defendant had given the orders, he left on vacation, (ECF No. 73-3, at 45, 62), no doubt with the expectation that the orders would be carried out and daily assessments would alert on-duty medical staff to lack of healing of the wound, or signs of infection that might arise. This is exactly what happened, with the infection being discovered on December 29, 2016, and Wright being transferred to UMC that same day. (ECF Nos. 43, at 6;

15

73-2, at 84-86, 90, 112; 76-1, at 8; 76-7, at 28; 84-12, at 7-8; 85-1, at 2-3 85-4, at 31; 89-3; 96-4, at 2.) Unfortunately, while Dr. Deacon testified that the infection could have been present from December 23, 2016, (ECF No. 89-5, at 37-38), no CUCF medical staff member observed it, though daily wound dressing changes took place on the days when Wright allowed them. (ECF Nos. 73-2, at 105-06; 73-3, at 76; 73-6, at 36, 48; 76-1, at 6-8; 76-7, at 29-31, 34; 84-12, at 6; 84-13, at 4; 84-16, at 4; 84-18, at 3; 85-1, at 6, 9; 85-4, at 11, 19, 27; 87-7, at 4; 96-4, at 3, 5.) Despite all this care, Wright later tragically suffered through an amputation.

To be sure, Wright's expert finds plenty of fault with Defendant's care of Wright. Whether or not Defendant and CUCF's medical staff members believed Wright's ulcers were infected, the expert opined from viewing an x-ray taken on December 29, 2016 that the infection must have been there on December 23rd. (ECF No. 89-5, at 37-38) He opined that Wright's symptoms should have led Defendant and CUCF medical staff to perceive the possibility of infection and treat for it. (ECF No. 89-5, at 66 ("Infection should have been [but was not] acknowledged as the most likely diagnosis at the top of the list of possible diagnoses.").) He opined that neither Jackman nor Defendant observed the "standard of care" for Wright's situation. (ECF No. 76-7.)

For instance, he opined that Defendant should have "formulate[d] a differential diagnosis for the cause in the lower . . . extremity, physical examination findings, and the need for crutches," (ECF No. 89-5, at 66); should not have relied "on Jason Jackman to conduct an assessment of Mr. Wright," (*id.* at 124); and should have "perform[ed] his own examination and make his own assessment," "culture[d] the wound and start[ed] antibiotic therapy," (*id.* at 65, 68, 122).

Most crucially, though, the expert also opined that (though he also opined that Defendant was mistaken) Defendant *did not believe* Wright had an infection (ECF No. 89-5, at 68.) This matches up exactly with other evidence that Defendant "wasn't concerned" about infection. (ECF No. 73-2, at 106.) The undisputed material evidence--provided by both Wright and Defendant--is explicit regarding Defendant's state of mind regarding Wright's serious medical need. Wright has thus not carried his burden to show that Defendant knew of a serious medical need. Defendant did not believe there was an infection and therefore did not "'disregard[] an excessive risk to inmate health or safety.'" *Burke*, 935 F.3d at 992 (quoting*Farmer*, 511 U.S. at 837). Defendant was not aware of infection and therefore did not "draw the inference." *Id.* (quotations omitted).

Therefore, as a matter of law, Defendant was not deliberately indifferent. *See Mata*, 427 F.3d at 761 (concluding nurse was not deliberately indifferent when she made "good faith effort to diagnose and treat medical condition" despite failing to diagnose heart attack). Defendant's December 23d verbal orders for Wright's care, (ECF Nos. 43, at 5; 73-2, at 84-86, 106; 73-3, at 45-46, 49-50, 62, 73-75, 76-77; 76-1, at 6; 76-6, at 1-2; 84-12, at 7-8, 10; 85-1, at 10, 12, 17-18; 89-3, at 5-6), are further evidence that Defendant was not deliberately indifferent. "Where a doctor orders treatment consistent with symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) (stating "mere possibility that Self's symptoms could also point to other conditions . . . is not sufficient to create an inference of deliberate indifference").

While it may be true that "the medical standard of care" demanded more from Defendant, but Wright's constitutional rights did not. *See Self*, 439 F.3d at 1234 ("[M]isdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the

17

subjective component of a deliberate indifference claim."); *see also Estelle*, 429 U.S. at 106 (concluding prison doctor's negligent diagnosis or treatment of medical condition does not amount to deliberate indifference"); *Jackson v. Lightsey*, 775 F.3d 170, 178-79 (4th Cir. 2014) ("While a non-cardiologist's erroneous diagnosis of a serious heart condition . . . may well represent a deviation from the accepted standard of care, standing alone it is insufficient to clear the 'high bar' of a constitutional claim."); *Duffield v. Jackson*, 545 F.3d 1234, 1236 (10th Cir. 2008) (affirming summary judgment for prison staff when inmate alleged staff did not refer him to outside specialist and gave "cursory" care because, even if treatment was negligent, it did "not constitute a medical wrong under the Eighth Amendment"); *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Unfortunately, Wright's symptoms were possibly misinterpreted by Defendant but "this falls well below the culpable state of mind necessary to support a deliberate indifference allegation." *Millward v. Bd. of Cnty. Comm'rs of Teton*, No. 17-CV-117-SWS, 2018 U.S. Dist. LEXIS 245504, at *81 (D. Wyo. Oct. 19, 2018).

Similarly, in another wound case, the Tenth Circuit concluded that the defendant "was not deliberately indifferent to" the plaintiff's worsening bedsores. *Spradley*, 764 F. App'x at 701. Spradley did "not dispute that [defendant] repeatedly changed dressings and provided other treatment for his ulcers, which showed [defendant] knew they posed some risk to . . . Spradley's health." *Id.* In response to Spradley's arguments that defendants were liable because they did not "hospitalize him" and did not "properly reposition him to relieve pressure on his bedsores," the Court suggested that the idea that defendants were treating the plaintiff's ulcers, but could have

done more, shows the possibility of negligence but not deliberate indifference. *Id.* at 701. Further, as with Defendant in the current case, when the *Spradley* defendant "was principally responsible for providing medical care," there was no evidence that the defendant thought of his role as solely a gatekeeper for other medical professionals capable of treating Spradley's wounds. *Id.* at 702. Here, Wright tries to cast Defendant as a gatekeeper but the evidence shows that he did not see that as his role. And like the defendant in *Spradley*, Defendant was experienced in treating wounds. *Id.*

This is all very different from cases found to be "cognizable under 42 U.S.C.S. § 1983." *Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997). Such cases instead have a clear "showing of deliberate refusal to provide medical attention." *See, e.g., id.; Wilder v. Krebs*, No. 2:17-cv-763-CMC-MGB, 2018 U.S. Dist. LEXIS 144413, at *15 (D.S.C. July 5, 2018) (denying defendant summary judgment when defendant knew plaintiff needed tooth filling but did not schedule filling appointment).

In the current case, Wright received repeated medical attention from Defendant and CUCF medical personnel. Tragically, it was not enough to avoid the need for transfer to UMC and eventual amputation. But the occurrence itself does not create liability for Defendant.

Because Wright has not carried his qualified-immunity burden of providing evidence of material facts supporting his view that Defendant breached his federal constitutional right, Defendant is protected from further litigation in this matter, without consideration of whether the law "was clearly established at the time of the defendant's conduct." *Sawyers*, 962 F.3d at 1282.

## IV. ORDER

**IT IS ORDERED** that:

**(1)** Defendant's motion to exclude Dr. Deacon's expert opinions is **DENIED**. (ECF No. 78.)

**(2)** Defendant's summary-judgment motion, based on qualified immunity, is **GRANTED**. (ECF No. 73.)

**(3)** Wright's motion for partial summary judgment is **DENIED**. (ECF No. 75.)

**(4)** Wright's remaining unnecessary-rigor claim under the Utah Constitution is **DISMISSED** without prejudice. Having denied relief on all federal claims, the Court declines to exercise supplemental jurisdiction over that state claim.

**(5)** Defendant's motion to seal documents is **GRANTED**. (ECF No. 83.) The documents in question were sealed upon filing and shall remain sealed. (ECF Nos. 85-1; 85-2; 85-3; 85-4.)

**(6)** This action is **CLOSED**.

DATED this 22nd day of March, 2022.

BY THE COURT:

_____
DAVID NUFFER
United States District Judge